## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MICHELLE DENISE SUMLIN,**

      **Plaintiff,**

**v.**                                        **Case No. 8:19-cv-3126-T-30AAS**

**ANDREW SAUL, Commissioner,**
**Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

    Michelle Sumlin requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' joint memorandum, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

## I.    PROCEDURAL HISTORY

    Ms. Sumlin applied for DIB and alleged disability beginning on August 18, 2014. (Tr. 427). Disability examiners denied Ms. Sumlin's application initially and after reconsideration. (Tr. 217–26, 229–42). At Ms. Sumlin's request, the ALJ held a hearing on June 1, 2017. (Tr. 156–216, 285). The ALJ issued an unfavorable decision to Ms. Sumlin on November 21, 2017. (Tr. 248–61).

The Appeals Council granted Ms. Sumlin's request for review of the ALJ's decision, vacated the ALJ's November 21, 2017 decision, and remanded back to the ALJ. (Tr. 269). The Appeals Council directed the ALJ to obtain more evidence about Ms. Sumlin's impairments to provide a complete administrative record. (Tr. 269–70)

On remand, the ALJ held a hearing on November 29, 2018. (Tr. 119–55). The ALJ issued an unfavorable decision to Ms. Sumlin on February 27, 2019. (Tr. 17–30). The Appeals Council denied Ms. Sumlin's request for review of the ALJ's February 27, 2019 decision, making it the Commissioner's final decision. (Tr. 1–4). Ms. Sumlin now seeks judicial review of the Commissioner's final decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Ms. Sumlin was sixty-three years old at the time of the ALJ's decision. (Tr. 124). Ms. Sumlin has a high school education. (Tr. 471). Ms. Sumlin has past work experience as a reservation clerk, therapy aide, and membership sales/leasing agent. (Tr. 29). Ms. Sumlin claims disability because of degenerative disc disease, lumbar lami L3-S1 spinal fusion, cervical disc (C5-7), total knee replacement (second knee surgery), osteoarthritis, pterygium, vertigo minears disease, and left shoulder (T1, T2). (Tr. 217, 229).

**B.    Summary of the ALJ's Decision**

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have an impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent her from performing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's Residual Functional Capacity (RFC).[3] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

---

[1] If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. § 404.1545(a).

The ALJ determined Ms. Sumlin had not engaged in substantial gainful activity since her alleged onset date. (Tr. 19). The ALJ found Mr. Sumlin has these severe impairments: "degenerative disc disease of the cervical and lumbar spine, status, post lumbar laminectomy and fusion in 2009 with lumbar laminectomy revision in 2017, and anterior cervical discectomy and fusion (ACDF) in 2016; osteoarthritis of the bilateral shoulders and knees, status post total left knee replacement in 2014 and left and right rotator cuff repairs in 2015; and bilateral carpel tunnel syndrome." (Tr. 19–20). The ALJ also found Ms. Sumlin had the following non-severe impairments: major depressive disorder, anxiety disorder, "acute anemia, minimal bilateral dependent airspace disease, episode of sinus tachycardia, hyperlipidemia, tension headache, episode of eustachian tube dysfunction, and episodic vertigo with ataxia." (Tr. 20). But the ALJ found Ms. Sumlin's impairments or combination of impairments fail to meet or medically equal the severity of an impairment in the Listings. (Tr. 22). The ALJ then found Ms. Sumlin has an RFC to perform light work,[4] with these added limitations:

> [She] requires the ability to change position between sitting and standing every 30 minutes; the claimant is limited to not more than

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

occasional pushing and pulling with the bilateral upper and lower extremities; postural activities can be performed occasionally, but never kneeling, crawling, or climbing ladders, ropes, and scaffolds; occasional overhead reaching with the bilateral upper extremities; frequent reaching in all other directions with the bilateral upper extremities; frequent reaching in all other directs with the bilateral upper extremities; frequent bilateral handling and fingering; not more than frequent exposure to vibration and workplace hazards such as unprotected heights and moving machinery.

(Tr. 23).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Sumlin could perform her past relevant work as a reservation clerk. (Tr. 29). Thus, the ALJ concluded Ms. Sumlin was not disabled. (Tr. 30).

## III.   ANALYSIS

### A.     Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). There must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.   Issues on Appeal

Ms. Sumlin raises five issues on appeal.[5] First, Ms. Sumlin argues the ALJ improperly evaluated the medical opinion of Heather Yohnke, a certified physician's assistant (PAC). (Doc. 23, pp. 26–30). Second, Ms. Sumlin asserts the ALJ erred in finding Ms. Sumlin's mental impairments were non-severe and the RFC failed to reflect the effect of Ms. Sumlin's mental impairments. (*Id.* at pp. 36–38). Third, Ms. Sumlin asserts the ALJ erred in concluding she could perform her past work as a reservation clerk. (*Id.* at pp. 18–20). Fourth, Ms. Sumlin argues the ALJ failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT). (*Id.* at pp. 42–44). Last, Ms. Sumlin contends the ALJ

---

[5] Ms. Sumlin argues her issues in different order. This report addresses the issues as they arise within the five-step sequential analysis.

circumvented the Medical-Vocational Guidelines by finding she could perform her past relevant work. (*Id.* at pp. 24–25).

### 1. Whether the ALJ properly evaluated the medical opinion of Heather Yohnke, PAC.

Ms. Sumlin argues the ALJ improperly gave little weight to the portion of PAC Yohnke's opinion stating Ms. Sumlin would need to take unscheduled rest breaks for ten minutes once per hour. (*Id.* at pp. 26–27). As a result, Ms. Sumlin argues the RFC is unsupported by substantial evidence. (*Id.* at p. 30). In response, the Commissioner argues the ALJ gave proper weight to PAC Yohnke's opinion and the RFC is supported by substantial evidence. (*Id.* at pp. 30–36).

When assessing the medical evidence, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). In determining the weight to afford a medical opinion, the ALJ considers many factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless there is "good cause" to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the

treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240–41. The ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam). When the ALJ articulates specific reasons for not giving a treating physician opinion controlling or significant weight and the reasons are supported by substantial evidence, there is no reversible error. *See Weekly v. Comm'r of Soc. Sec.*, 486 F. App'x 806, 808 (11th Cir. 2012) (citation omitted).

On May 15, 2017, PAC Yohnke completed a Disability Impairment Questionnaire. (Tr. 1293–97). PAC Yohnke opined Ms. Sumlin could sit for four hours and stand or walk for four hours. (Tr. 1295). PAC Yohnke stated Ms. Sumlin would need to avoid continuous sitting and would need to get up and move around once an hour for ten minutes. (*Id.*). PAC Yohnke stated that Ms. Sumlin's pain, fatigue, or other symptoms would rarely be severe enough to interfere with her attention and concentration. (Tr. 1296). But PAC Yohnke stated Ms. Sumlin would need to take unscheduled breaks every hour for ten minutes during an eight-hour workday. (*Id.*).

As an initial matter, opinions on issues such as whether the claimant is disabled and the claimant's RFC "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see also* Social Security Regulation 96-5p, 1996 WL 374183 (July 2, 1996). Opinions on issues reserved to the Commissioner

8

are not entitled to controlling weight or special significance. *See* Social Security Regulation 96-5p, 1996 WL 374183. Thus, the ALJ properly considered PAC Yohnke's Disability Impairment Questionnaire, but Ms. Sumlin's RFC is an issue reserved for the Commissioner.

The ALJ explained that PAC Yohnke as a certified physician assistant is not an acceptable medical source for purpose of diagnosing medically determinable impairments. (Tr. 28); 20 C.F.R. § 404.1527(f); *see also* 20 C.F.R. § 404.1502 (defining acceptable medical sources). Even though PAC Yohnke is not an acceptable medical source, the ALJ determined her assessment was valuable and noted Dr. Anthony Moreno, who was Ms. Sumlin's treating orthopedic surgeon, supervised PAC Yohnke and there was no evidence Dr. Moreno disagreed with PAC Yohnke's opinion. (Tr. 28). The ALJ gave partial weight to PAC Yohnke's opinion, but delineated what parts of the opinion she gave great weight and little weight. (*Id.*).

The ALJ gave little weight to PAC Yohnke's opinion that Ms. Sumlin would require unscheduled breaks every hour because it was inconsistent with her opinion that Ms. Sumlin's pain, fatigue, or other symptoms would rarely interfere with her attention and concentration.[6] (*Id.*). The ALJ properly gave little weight to PAC

---

[6] The ALJ also gave little weight to PAC Yohnke's opinion that Ms. Sumlin is limited to occasionally lifting and/or carrying up to 20 pounds, 5 to 10 pounds, and 0 to 5 pounds because it was inconsistent within itself. (Tr. 28). Ms. Sumlin does not challenge this assessment. In a social security cases, issues not raised before the district court are waived. *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x. 882, 885 (11th Cir. 2011) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

Yohnke's opinion about unscheduled breaks because it was a checked-box questionnaire with pre-printed statements consisting of mere conclusions without relevant evidence to support those conclusions. *See* 20 C.F.R. § 404.1527(c)(3); *Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1305 (11th Cir. 2018).

The ALJ also properly gave little weight to PAC Yohnke's finding about unscheduled breaks because Dr. Moreno's treatment records do not support a need for unscheduled breaks. Dr. Moreno performed spine surgery on Ms. Sumlin in 2009, and in March 2015, Ms. Sumlin returned to Dr. Moreno for cervical spine pain. (Tr. 1175). Even though Ms. Sumlin reported pain and Dr. Moreno noted decreased range of motion, Ms. Sumlin had normal muscle strength, posture, and gait. (Tr. 1176, 1192, 1199, 1202, 1210). In July 2016, Dr. Moreno performed an Anterior Cervical Discectomy and Fusion (ACDF) on Ms. Sumlin's cervical spine. (Tr. 1220). In October 2016 following her ACDF surgery, physical findings showed decreased left rotation in Ms. Sumlin's range of motion but no tenderness, normal motor strength, appropriate gait, and normal posture. (Tr. 1239). Ms. Sumlin's postoperative x-rays of her cervical spine were stable. (*Id.*).

After recovering from her ACDF surgery, Ms. Sumlin returned to Dr. Moreno for lumbar spine pain. (Tr. 1244). At her visits for her lumbar spine, Ms. Sumlin noted pain, but her physical exam showed normal gait and posture, no tenderness, full range of motion, and normal muscle strength. (Tr. 1244, 1255). Before her surgery on her lumbar spine, Dr. Moreno again found normal posture and gait, normal muscle

10

strength, and full range of motion in lumbar flexion and extension. (Tr. 1258). In April 2017, Dr. Moreno performed a revision laminectomy and fusion on Ms. Sumlin's lumbar spine. (Tr. 1280). At her May follow-up, Ms. Sumlin had normal muscle strength, normal gait and posture, and full range of motion in lumbar flexion and extension. (Tr. 1289).

Thus, the ALJ articulated good reasons, supported by substantial evidence, for discounting PAC Yohnke's portion of the Disability Questionnaire that opined Ms. Sumlin would need to take unscheduled breaks once an hour for ten minutes. The ALJ applied the proper legal standards and independently formulated the RFC by evaluating all of the medical opinion evidence and other evidence in the record.

2. **Whether the ALJ erred in finding Ms. Sumlin's mental impairments as non-severe and whether the RFC failed to include the impact of Ms. Sumlin's mental impairments.**

Ms. Sumlin makes two distinct arguments related to her mental impairments. Thus, the court will address them in subsections.

a. **Whether the ALJ properly found Ms. Sumlin's mental impairments were non-severe.**

Ms. Sumlin argues the ALJ erred in finding her mental impairments were non-severe because her mental impairments impose more than a mild limitation on Ms. Sumlin's ability to work. (Doc. 23, p. 36). In response, the Commissioner argues the ALJ properly determined Ms. Sumlin's mental impairments were non-severe. (*Id.* at pp. 39–41).

When evaluating the severity of a mental impairment, the ALJ must apply the Psychiatric Review Technique (PRT). 20 C.F.R. § 404.1520a(a). Using that technique, the ALJ assigns a degree of limitation in four broad areas of functioning: understanding, remember, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).

Here, the ALJ properly applied the PRT and found Ms. Sumlin had medically determinable mental impairments[7] that did not cause more than "mild" limitation in her ability to perform basic mental work activities. (Tr. 20). In understanding, remembering, or applying information, the ALJ concluded Ms. Sumlin had no limitations. (Tr. 21). In support, the ALJ noted Ms. Sumlin could perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, and take her medication. (Tr. 256). There is no mention in any of Ms. Sumlin's medical records about short- or long-term memory issues, and while at the emergency room in May 2017, the doctors noted Ms. Sumlin had normal thought process. (Tr. 976).

In interacting with others, the ALJ found Ms. Sumlin had no limitations. (Tr. 21). In support, the ALJ noted even though Ms. Sumlin claims she has trouble getting along with others, Ms. Sumlin states she spends time with friends and family. (Tr.

---

[7] Ms. Sumlin is correct that the ALJ incorrectly noted Dr. Lisa Scudder did not diagnose Ms. Sumlin with generalized anxiety disorder. (Doc. 23, p. 36). However, the ALJ considered Ms. Sumlin's anxiety order and determined Ms. Sumlin had "medically determinable mental impairments of major depressive disorder and anxiety disorder." (Tr. 20).

146, 516, 518). At her doctor's visits, Ms. Sumlin was pleasant and cooperative. (Tr. 775, 796, 1005, 1027, 1036, 1051, 1192, 1199, 1224, 1685).

In concentrating, persisting, or maintaining pace, the ALJ found Ms. Sumlin had mild limitations. (Tr. 21). On her Adult Function Report, Ms. Sumlin states she has trouble staying focused. (Tr. 517). But at the ALJ hearing, Ms. Sumlin stated that she can watch TV and listen to music. (Tr. 145). At her doctor's visits, Ms. Sumlin was alert and properly oriented. (Tr. 775, 796, 913, 976, 1005, 1027, 1036, 1051, 1192, 1199, 1224, 1612, 1613, 1685).

In adapting or managing oneself, the ALJ found Ms. Sumlin had no limitations. (Tr. 21). In support, the ALJ noted Ms. Sumlin can handle her self-care and her personal hygiene. (Tr. 145). At her doctor's visits, Ms. Sumlin had normal judgment and insight. (Tr. 1005, 1027, 1036, 1051, 1613).

The ALJ addressed the treatment notes where Ms. Sumlin was diagnosed with major depressive disorder. (Tr. 20). Other than the state agency psychological consultant, the administrative record contains no records from a mental health doctor. Instead, Dr. Lisa Scudder, Ms. Sumlin's primary care physician, diagnosed Ms. Sumlin with generalized anxiety disorder (Tr. 1705) and major depressive disorder (Tr. 1713). As a result, Dr. Scudder prescribed Lexapro, and Ms. Sumlin stated she was feeling better since being prescribed Lexapro. (Tr. 1713, 1715). Previously, doctors prescribed Ms. Sumlin Xanax for her anxiety related to her

medical procedures. (Tr. 703–04). Other than PHQ-9 screening[8] and noting Ms. Sumlin was alert and in no acute distress, Dr. Scudder's treatment notes contain no mental status examination findings. (Tr. 1712–13, 1715–18).

Thus, the ALJ properly found Ms. Sumlin's mental impairments were non-severe.

### b.   Whether the ALJ considered Ms. Sumlin's mental impairments in the RFC.

Ms. Sumlin asserts the ALJ failed to incorporate Ms. Sumlin's mental limitations in the RFC. (Doc. 23, pp. 36–37). In response, the Commissioner argues Ms. Sumlin failed to show how her mental impairments caused additional limitations beyond those the ALJ accounted for in the RFC determination. (*Id.* at p. 39).

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). When a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the PRT at step two. *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005); 20 C.F.R. § 404.1520a. If, after applying the PRT, the ALJ rates the functional limitations caused by the claimant's mental impairment to be "none" or "mild," then the ALJ will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal

---

[8] The PHQ-9 (Patient Health Questionnaire) is a "self-administered tool[ ] for assessing depression." *Patient Health Questionnaire*, American Psychological Association, https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health (last updated June 2020).

limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). The ALJ must provide a specific explanation for her opinion, including the degree of limitation found in the functional areas. 20 C.F.R. § 404.1520a(c)(4), (e)(4). The ALJ must incorporate the results of the PRT into the findings and conclusions. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).

As discussed above, the ALJ properly addressed Ms. Sumlin's mental impairments at step two and found Ms. Sumlin's mental impairments were non-severe. (Tr. 20–22). In concluding this, the ALJ properly incorporated pertinent findings and conclusions based on applying the PRT, including the degree of limitation for each of the four functional areas. *Moore*, 405 F.3d at 1213–14; 20 C.F.R. § 404.1520a(e)(4). In doing so, the ALJ discussed Ms. Sumlin's function reports and questionnaires, Ms. Sumlin's hearing testimony, and medical records from Ms. Sumlin's primary care doctor Dr. Scudder. (Tr. 20–21).

The ALJ acknowledged that the PRT assessment differs from a mental RFC evaluation at steps four and five (which, the ALJ correctly noted, requires a "more detailed assessment" of the functional limitations of a claimant's mental impairments), and stated that she had incorporated the mental function analysis into the RFC analysis. (Tr. 21); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). While still under the heading of step

15

two, the ALJ then began conducting the mental RFC assessment by discussing Ms. Sumlin's 2016 and 2017 appointments with Dr. Scudder that show diagnosis of mental impairments but provide little mental status examination findings. (Tr. 20 (citing Exhibit 37F)). The ALJ also discussed mental status examination findings showing Ms. Sumlin had intact memory, judgment, and insight, normal mood and affect, and age appropriate judgment and insight. (Tr. 20 (citing Exhibit 33F)(showing an October 2018 doctor visit)). In the RFC discussion, the ALJ made clear that she considered Ms. Sumlin's symptoms and the opinion evidence under the applicable regulatory standards. (Tr. 23). The ALJ noted Ms. Sumlin reported that she needed notes to remind herself to take care of her needs but testified that she could live alone, drive a car, prepare her own meals, do her own laundry, and shop independently without difficulty. (*Id.*).

The ALJ also considered the state agency psychological consultant Dr. Thomas Clark's opinion and assigned it some weight. (Tr. 29). The ALJ gave proper weight to Dr. Clark's opinion because although Dr. Clark's opinion would not warrant great weight, he is a highly qualified state agency consultant and his opinion was consistent with the record thus warranting some weight. (Tr. 29, 235–36); *see* 20 C.F.R. § 404.1527(e)(2)(i) (explaining state agency consultants are highly qualified physicians and experts in Social Security disability evaluation). The ALJ did not unconditionally adopt Dr. Clark's opinion but considered new evidence not before Dr. Clark. (Tr. 29); *see also Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (stating

the ALJ does not give undue weight to a non-examining doctor when the ALJ does not unconditionally adopt the non-treating doctor's opinion and considers all the evidence to support the ALJ's conclusions). The ALJ specifically noted Dr. Clark's opinion was "consistent with the medical record available at the time he offered his opinion." (Tr. 29). Thus, the ALJ properly gave Dr. Clark's opinion some weight.

Thus, the ALJ properly addressed Ms. Sumlin's mild limitations from her mental impairments into the RFC analysis.

*          *          *

The ALJ's determination in both the step two and step four analyses are supported by substantial evidence, and Ms. Sumlin shows no error in the ALJ's overall mental RFC assessment.

### 3. Whether the ALJ erred in concluding Ms. Sumlin could perform her past work as a reservation clerk.

Ms. Sumlin argues the ALJ erred in finding she could perform her past work as a reservation clerk. (*Id.* at pp. 19–20). Ms. Sumlin asserts that her past work as a reservation clerk does not match the duties categorized in the DOT and is a composite job. (*Id.*). In response, the Commissioner contends the ALJ properly considered the evidence and substantial evidence supports the ALJ's determination that Ms. Sumlin could perform her past relevant work as a reservation clerk. (*Id.* at p. 21).

The ALJ has a basic obligation to develop a full and fair record. *E.g.*, *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citation omitted). "To support a finding that the claimant is able to return to her past relevant work, the ALJ must (1)

17

consider all the duties of that work and (2) evaluate the claimant's ability to perform them in spite of her impairments." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citation omitted). A claimant, however, "bears the initial burden of proving she is unable to perform her previous work." *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) (citations omitted).

Ms. Sumlin identified her job title as customer service and stated she would "answer phones, make reservations, organize and use fax machine, photo copier, computer performing data entry." (Tr. 494). Ms. Sumlin noted that, in a typical workday, she would walk for two hours, stand for two hours, and sit for eight hours. (*Id.*). Ms. Sumlin did not lift or carry in this job. (*Id.*).

To determine whether Ms. Sumlin could perform her past work, the ALJ obtained testimony from a Vocational Expert (VE). (Tr. 130–34, 148–53). An ALJ may rely on a VE's testimony to determine the demands of a claimant's former work and to determine whether the claimant can perform that work. *See* 20 C.F.R. § 404.1560(b)(2). The VE testified that Ms. Sumlin's past work as a reservation clerk[9] was sedentary work per the DOT. (Tr. 130). When asked whether an individual with Ms. Sumlin's RFC could perform her past work as a reservation clerk, the VE testified that such an individual could perform that work. (Tr. 132–33). When presented the opportunity to counter the VE's testimony that Ms. Sumlin could perform her past

---

[9] Based on the job description provided by Ms. Sumlin, the VE classified Ms. Sumlin's customer service work as a reservation clerk. (*See* Tr. 127–28, 130).

relevant work, Ms. Sumlin stated she had trouble using a computer for a long time because of her neck, yet she failed to present evidence to support these assertions. (Tr. 143).[10]

Ms. Sumlin's work as a reservation clerk qualifies as past relevant work. (*See* Tr. 29). Work experience is past relevant work if the work was done within the prior fifteen years, was substantial gainful activity, and lasted long enough for the claimant to learn to do the job. *See* 20 C.F.R. § 404.1560(b)(1); Social Security Regulation 82-61, 1982 WL 31386, at *2 (Jan. 1, 1982). Ms. Sumlin testified that she was making reservations and reported she worked in customer service from 2000 through 2009. (Tr. 127–28, 487). Ms. Sumlin worked for the same company from 2000 through 2014 in different jobs, which her earning records confirm. (Tr. 434–36).

Ms. Sumlin's work as a reservation clerk did not constitute a composite job. A composite job has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (quoting Social Security Regulation 82-61, 1982 WL 31386, at *2) (internal citations omitted). To establish that a position is a composite job, a claimant "ha[s] to prove that her job had significant elements of two or more occupations." *Pineda v. Comm'r of Soc. Sec.*, No. 6:18-cv-01569-CEM-DCI, 2020 WL 1430697, at *3 (M.D. Fla. Mar. 24, 2020) (citation omitted). When the claimant's previous work

---

[10] Ms. Sumlin argues that her limitations on her ability to work on the computer were discussed at the hearing. (Doc. 23, p. 20). However, Ms. Sumlin incorrectly cites the June 2017 ALJ hearing. (*See* Tr. 156–216).

19

qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as performed. *Smith*, 743 F. App'x at 954 (citing Social Security Regulation 82-61, 1982 WL 31386).

Ms. Sumlin did not object to the VE's testimony, nor raise the possibility that her work was not past relevant work or a composite job at her November 2018 hearing. (*See* Tr. 119–55). Ms. Sumlin's job duties included answering phones, making reservations, using the fax machine and photo copier, and performing data entry. (Tr. 494). While the definition of a reservation clerk under DOT § 238.362-014 does not include the words "data entry," many tasks described within involve data entry by the individual such as "keep[ing] current directory of hotels, motels, and timetables" and compiling and submitting reports to companies about reservations. Ms. Sumlin introduced no evidence about (1) any additional duties that fell outside the usual responsibilities of a reservation clerk, or (2) how these unknown duties were a "significant element" of another occupation. *See Smith*, 743 F. App'x at 954. In addition, the VE never stated that Ms. Sumlin's reservation clerk work had significant elements of two or more occupations so that it would have no counterpart in the DOT. (*See* Tr. 128–34, 148–53).

Substantial evidence supports the ALJ's conclusion that Ms. Sumlin could perform her past relevant work as a reservation clerk, and it was not a composite job.

20

4. **Whether the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT.**

Ms. Sumlin argues the VE failed to address the apparent conflict between the RFC and hypothetical question that limits overhead reaching to occasionally with the job of a reservation clerk that requires frequent reaching. (Doc. 23, p. 42). Ms. Sumlin asserts the ALJ incorrectly stated that the VE testified in accordance with DOT except with the limitations of overhead reaching. (*Id.*). In response, the Commissioner argues the existence of a conflict between the VE's testimony and the DOT is irrelevant because at step four, the ALJ properly found Ms. Sumlin could perform her past relevant work as she *actually* performed it and this finding stemmed from Ms. Sumlin's description of how she performed the work, not on how the DOT defines the job. (*Id.* at pp. 44–47).

Social Security Ruling 00-4p "is designed to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a [VE] and information in the DOT." *Davis v. Astrue*, No. 8:11-CV-2398-T-TGW, 2012 WL 6213124, at *7 (M.D. Fla. Dec. 13, 2012). An ALJ "must: [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Social Security Regulation 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). When a VE provides evidence about the requirements of a job or occupation, the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and

21

information provided in the DOT." *Id.* at \*4. Beyond this general duty to ask about possible conflicts, if evidence from a VE "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict."[11] *Id.* Further, "[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1363 (11th Cir. 2018) (citation and internal quotation marks omitted). "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.*

Under Social Security Regulation 00-4p, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." Social Security Regulation 00-4p, 2000 WL 1898704, at \*2. Rather, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id.*

At step four, the ALJ stated

> Mr. Brown [the VE] testified in accordance with the DOT, except with regards to the limitations of bilateral overhead reaching, as it is not contemplated by the DOT. He testified that he based his opinion on his knowledge and professional experience in the field. He testified that he based his opinion on his knowledge and professional experience in the field. Mr. Brown's resume reveals that he has the education, training,

---

[11] The term "apparent conflict" is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018).

> and experience necessary to competently make such assessments as a
> vocational expert (Exhibit 24E). The claimant's representative testified
> to having no objection to Mr. Brown testifying in an expert capacity
> (Hearing Transcript). Therefore, I accept his testimony in accordance
> with SSR 00-4P.

(Tr. 30). To begin, Ms. Sumlin cites the inapplicable June 2017 hearing transcript to support her argument that the VE denied his testimony conflicted with the DOT. (Doc. 23, p. 42 (citing Tr. 207–08)). But looking at the applicable November 2018 hearing transcript, the VE stated, "[o]verhead reach, Your Honor, is not contemplated by the DOT." (Tr. 134). Then to follow up on this gap in the DOT, the VE explained that in his experience, a person working as a reservation clerk would not be expected to be able to do more than "occasional overhead reach in the work as a reservation clerk." (*Id.*).

For the job of reservation clerk, the DOT description states the job requires frequent reaching but mentions no overhead reaching. U.S. Dep't of Labor, DOT (4th ed. 1991) § 238.362-014. Although the ALJ has an affirmative duty to identify any apparent conflicts and resolve them, courts in the Eleventh Circuit have "uniformly held that the DOT's silence on a job requirement or limitation does not suggest the existence of a conflict between the DOT and the VE's testimony; rather, it indicates the absence of a conflict." *Ledkins v. Berryhill*, No. 18-00011-B, 2019 WL 1294006, at *9 (S.D. Ala. Mar. 21, 2019) (collecting cases from district courts in the Eleventh Circuit, including the Middle District of Florida). Thus, no apparent conflict exists. *See Bennett v. Comm'r of Soc. Sec.*, No. 2:17-cv-582-FtM-MRM, 2019 WL 410271, at

23

*8 (M.D. Fla. Feb. 1, 2019) (finding no conflict between the VE's testimony and DOT jobs that require reaching in general but include no mention of overhead reaching).

Because there is no apparent conflict between the VE's testimony and the DOT, *Washington* does not apply and the ALJ did not err in relying on the VE's testimony. Substantial evidence supports the ALJ's reliance on the VE's testimony.

> ### 5. Whether the ALJ circumvented the Medical-Vocational Guidelines by finding that Ms. Sumlin could perform her past relevant work.

Ms. Sumlin argues the ALJ ignored the composite nature of Ms. Sumlin's past work and the apparent conflict with the DOT to circumvent the Medical-Vocational Guidelines (Grids). (Doc. 23, p. 24). Ms. Sumlin asserts that if the ALJ found she could not perform her past relevant work, she would have been found to be disabled under the Grids. (*Id.*). In response, the Commissioner argues substantial evidence supports the ALJ's finding that Ms. Sumlin could perform her past relevant work. (*Id.* at p. 25). The Commissioner asserts Ms. Sumlin's non-exertional limitations preclude using the Grids to direct a finding of disabled or not disabled. (*Id.*).

As discussed above, the ALJ's conclusion that Ms. Sumlin could perform her past work as a reservation clerk is supported by substantial evidence. Because Ms. Sumlin could perform her past relevant work, the ALJ properly ended the analysis at step four and did not need to move on to step five. *See* 20 C.F.R. § 404.1520(a)(4) (stating if a claimant is found to be disabled or not disabled at any step, the ALJ will not go to the next step).

Had the ALJ moved on to step five, Ms. Sumlin's non-exertional limitations would have precluded the ALJ from using the Grids. "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy." *Phillips,* 357 F.3d at 1239. First, the ALJ may apply the Grids. *Id.* (citing 20 C.F.R. § 404, subpart P, appendix 2). Second, the ALJ may consult a VE with hypothetical questions about whether someone with the claimant's impairments could find employment in the national economy. *Phillips,* 357 F.3d at 1239–40.

"Exclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985). "[D]ifficulty performing the manipulative or postural functions of sum work such as reaching, handling, stopping, climbing, crawling, or crouching" is an example of non-exertional limitations. 20 C.F.R. § 404.1569a(c)(1)(vi).[12] Here, the ALJ found Ms. Sumlin could perform certain postural activities occasionally but never kneeling, crawling, or climbing. (Tr. 23). Thus, Ms. Sumlin's non-exertional limitations would preclude the ALJ from using the Grids at step five.

---

[12] Other nonexertional limitations include difficulty functioning, maintaining attention or concentrating, understanding or remembering detailed instruction, tolerating some physical features of certain work settings. 20 C.F.R. § 404.1569a(c).

25

IV.     **CONCLUSION**

The Commissioner's decision is supported by substantial evidence. Thus, the undersigned recommends the Commissioner's decision be **AFFIRMED** and the Clerk be directed to close the file.

**RECOMMENDED** in Tampa, Florida on November 23, 2020.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

26

## <u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.